FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA   97 AUG -6 AM 9:45
SOUTHERN DIVISION

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| JOHN K. LOVE, | ] |
| Plaintiff(s), | ] |
| vs. | ] CV-96-N-2338-S |
| WAL-MART, INC., | ] |
| Defendant(s). | ] |

ENTERED
AUG 6 1997

### Memorandum of Opinion

**I.   Introduction.**

In this employment discrimination action, the plaintiff, John K. Love ("Love"), brings claims against Wal-Mart, Inc. ("Wal-Mart") pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (the "ADEA"). Specifically, he contends that the defendant discriminated against him on the basis of age when it demoted him for no reason and replaced him with a 24-year-old, gave him a low bonus in 1993, and gave him no bonus in 1994. *Complaint* at 2-4.

The matter is presently before the court on the defendant's motion for summary judgment, filed on June 2, 1997. The motion has been fully briefed and is ready for decision. Upon due consideration, the motion will be granted.

36

## II.     Statement of Facts.[1]

Wal-Mart hired Love as a customer service person in 1980 at the Oneonta, Alabama, store. He remained an hourly employee until Wal-Mart promoted him to assistant manager in 1983. As an assistant manager, the plaintiff was responsible for the maintenance, layout, stocking, and upkeep of certain store areas.

He worked at the Oneonta store until 1991, when he transferred to a store in Laramie, Wyoming. He remained in Laramie for six months and transferred to a store in Crossville, Tennessee. In April 1993, he transferred to a Leeds, Alabama, location and subsequently returned to the Oneonta store in September 1993. From 1983 until the end of August 1995, Love worked as an assistant manager.

In February 1995, Dean Gaskins ("Gaskins") became the District Manager, with responsibility for the Oneonta store. Gaskins' responsibilities included visiting the various stores within his assigned district on a regular basis to view the stores and their employees. The first time Gaskins observed the plaintiff's area of responsibility in February 1995, he was "not impressed." *Gaskins Deposition* at 59. Because Gaskins had not yet observed Love's performance over time, he did not reach the conclusion that the "poor area" was the fault of the plaintiff. *Id.* From February until August 1995, however, Gaskins personally observed the plaintiff and noticed a decline in performance with regard to Love's ability

---

[1] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

2

to meet deadlines and to properly label, present, flag, and display merchandise.[2] Gaskins also believed the plaintiff failed to hold accountable the employees who reported to him.[3]

On March 6, 1995, Gaskins counseled the plaintiff regarding his performance. At that time, Love admitted that his area had not been arranged according to a new design and that it had been his responsibility to see that this task was done. Gaskins completed a coaching form on that date that indicated it was the first written coaching session. Gaskins expressed on the form that if Love's performance did not improve, the next level of corrective action he would take would be a second written coaching and possible demotion to an hourly position.

By late July 1995, Gaskins felt that the plaintiff's performance had not improved and decided that Love could not continue as an assistant manager at the Oneonta store. Gaskins also read two previous evaluations of the plaintiff's performance, dated January 12, 1995, and July 13, 1994. These evaluations stated, among other things, that Love needed to improve with regard to delegating tasks, following up with his employees to insure they completed their assigned tasks, improving his sense of urgency, and holding people accountable. Gaskins relied solely on his own observations of the plaintiff's performance and not these prior evaluations when making the decision that Love could not remain in his

---

[2] The plaintiff disputes this fact, citing paragraph 5 of his affidavit as support for his dispute. Paragraph 5, however, addresses the plaintiff's impressions of his work quality, not Gaskins' observations. Therefore, the court will deem this fact to be admitted for purposes of the motion for summary judgment.

[3] The plaintiff also disputes this fact, citing paragraph 6 of his affidavit as support for his dispute. Again, however, this paragraph addresses only the plaintiff's subjective belief regarding his performance and not Gaskins' impressions. For this reason, the court will deem this fact to be admitted for purposes of the motion for summary judgment.

current position. Gaskins did not consult with Oneonta store manager Ken Thomas prior to deciding to demote the plaintiff.

In August 1995, Gaskins informed Love that he had the option of transferring to another store as an assistant manager with no change in duties, pay, or benefits, or he could remain at the Oneonta location at the next lower level of employment, the highest paid hourly employee. The option to transfer included an assistant manager position at those stores within a relatively short driving distance of Oneonta so that the plaintiff would not have to move. Three of the stores discussed in conjunction with the offer were located in Boaz, Alabama; Centerpoint, Alabama; and Attalla, Alabama. These stores are as large or larger than the Oneonta location and are within thirty miles of Oneonta.

Gaskins decided to offer the plaintiff the option to transfer to a new store so Love would have an opportunity to demonstrate how he would perform under a "different set of circumstances, different people, different manager, [and] different locale."[4] *Gaskins Deposition* at 142-43. Gaskins had the authority as District Manager to transfer Love to another location without allowing him the option to remain at Oneonta as an hourly employee.

Love opted to remain in Oneonta as an hourly employee at a wage of $10.85 per hour. If he had accepted the assistant manager position at the Centerpoint store, he would have received a six-percent salary increase as part of Wal-Mart's Geographic Assistance

---

[4] The plaintiff disputes this fact, citing paragraphs 6, 7, and 8 of his affidavit as support for his dispute. Again, however, these paragraphs address the plaintiff's own impressions of his performance and do not address Gaskins' observations and/or feelings on the subject. Therefore, the court will deem the fact to be admitted for purposes of the motion for summary judgment.

4

Program. Prior to the plaintiff's demotion, however, Gaskins allowed him to take his vacation so that he could be paid at a higher rate during that time period.

Gaskins never held a second coaching session with Love regarding Love's failure to tour his assigned areas in detail. With the exception of the March 6, 1995, coaching form, Gaskins completed no written documentation of his observations of Love's poor performance. Various members of Wal-Mart management evaluated the plaintiff's performance during his tenure as an employee. Love's overall performance was rated as meeting or exceeding expectations on May 28, 1986; August 3, 1987; October 28, 1988; July 14, 1989; September 8, 1989; April 6, 1990; August 20, 1990; March 8, 1991; August 30, 1991; April 20, 1992; October 25, 1992; March 4, 1993; September 25, 1993; July 29, 1994; January 11, 1995; and October 31, 1995. Gaskins never formally evaluated Love's overall performance in writing.

After Love's demotion, Wal-Mart's personnel office telephoned Gaskins to see if any store near Gadsden, Alabama, had an opening for an assistant manager. Janice Metwaly, an assistant manager in Nashville, Tennessee, had requested a transfer to the Gadsden area. Gaskins informed the personnel office of the opening at the Oneonta store, which is in the vicinity of Gadsden. Metwaly transferred to the Oneonta store as an assistant manager in October 1995. Her date of birth is April 1, 1963, and at the time she transferred, she was in her early thirties. Gaskins did not consider Metwaly or any other Wal-Mart employee as a replacement for the plaintiff. Metwaly was eventually replaced by Greg Tanner, who was born on August 19, 1964. Also serving as an assistant manager in the Oneonta store was David Tyler, whose date of birth is October 6, 1972.

Love stated in his affidavit that during his tenure as assistant manager, he did not complete many coaching forms with regard to the employees who reported to him because he did "not feel it was fair to jeopardize these individuals' career [sic] as . . . they were doing all they could do under [Wal-Mart's] resources and circumstances to get the job done." *Plaintiff's Affidavit* at ¶ 6. He stated that, consequently, Gaskins criticized him as "being too much of a 'father figure'" to his subordinates. *Id.* Love testified at deposition, however, that Gaskins never made a derogatory comment about the plaintiff's or any other employee's age. *Plaintiff's Deposition* at 154, 174.

The plaintiff was born on April 14, 1938, and at the time of his demotion, he was fifty-seven years old and the oldest assistant manager in the district supervised by Gaskins. Since 1993, Gaskins has demoted ten managers and one assistant manager, the plaintiff, for poor performance. One of those managers was Annette Sumner, whose date of birth is January 10, 1941. In July 1995, Gaskins demoted Roy Robinson from manager to assistant manager for poor performance and lack of urgency. Robinson was approximately forty-two years old at the time. Gaskins gave managers Debbie Golden and Mike Durham options to either correct performance deficiencies or choose alternative career paths. Both individuals chose the latter option. Golden was born on May 5, 1958, while Durham was born on March 20, 1963. Gaskins has promoted one man over the age of fifty to manager.

Love filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 16, 1996. On September 6, 1996, he filed the instant action alleging age discrimination.

6

## III. Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of

7

Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must

8

"view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV.    Discussion.

The plaintiff contends that Wal-Mart discriminated against him on the basis of age in violation of the ADEA. The ADEA prohibits an employer from discharging or otherwise discriminating against an employee on the basis of age. 29 U.S.C. § 631 *et seq.* Individuals who are at least 40 years of age, § 631, may seek to establish a prima facie case in one of three ways: (1) by direct evidence of discriminatory intent; (2) by statistical proof; (3) or by meeting the four-pronged test set out for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989).

### A.    Direct Evidence.

"Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact without inference or presumption." *Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th Cir. 1989) (citations omitted). "[O]nly the most blatant remarks, whose intent could be nothing more than to discriminate . . . constitute direct evidence of

discrimination." *Id.* at 582 (footnote omitted). Love proffers as direct evidence of age discrimination a "history of Wal-Mart management remarks referencing his age as impacting his career direction at Wal-Mart." *Opponent's Responsive Submission* at 24. He states he was "informed that some assistant managers were too complacent because of their growing profit sharing retirement accounts," was advised to "think about retirement," was "informed that he was blocking the advancement of younger men," was told that "more was expected of him because of his experience," and that management remarked that he was still using a "'two wheeler.'"[5] *Id.* Love also states that Gaskins remarked that Love improperly acted as a "father figure" to his employees. *Id.*

Gaskins made only one of the proffered comments, and the plaintiff admits in his affidavit that Gaskins' reference to Love as a father figure regarded the plaintiff's tendency to coddle his employees. *See Plaintiff's Affidavit* at ¶ 6. In fact, Love testified in deposition that he could not recall an instance in which Gaskins commented in a derogatory manner on the plaintiff's age. *Plaintiff's Deposition* at 154, 174. The other comments to which he refers were made by other members of Wal-Mart management and not by his supervisor at the time of the alleged discriminatory action. Furthermore, the statements were made at a time prior to Gaskins' decision to demote the plaintiff. Consequently, they are remote in time and attributed to a nondecisionmaker. Accordingly, they do not amount to sufficient direct evidence of discrimination on the part of the defendant. *See Mauter v. Hardy Corp.*, 825 F.2d 1554, 1558 (11th Cir. 1987) (statement by vice president who did not make

---

[5] Love states the reference to his use of a "two wheeler" regarded Wal-Mart's former methodology of moving stock with hand trucks. *Opponent's Responsive Submission* at 24.

10

decision to discharge plaintiff did not present genuine issue of material fact as to company's discriminatory intent). Thus, the plaintiff must attempt to make out his prima facie case through either statistical or circumstantial evidence.

### B.  Statistical Evidence.

Love attempts to proffer statistical evidence of age discrimination on the part of Wal-Mart. He offers evidence demonstrating that since 1993, Gaskins has demoted ten managers and one assistant manager, the plaintiff, for poor performance. Only the plaintiff and two other individuals, Annette Sumner and Roy Robinson, were over the age of forty at the time of their demotions. Love also offers evidence that Gaskins has promoted only one individual over the age of fifty.

While such data might conceivably bear on the issue of discrimination, Love offers no information with regard to the universe from which these statistics are derived. The court cannot surmise the number of managers over the age of forty who have reported to Gaskins; therefore, it cannot place the proffered statistics in a significant context. "Statistics . . . without an analytic foundation, are virtually meaningless." *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 952 (11th Cir. 1991), *cert. denied*, 502 U.S. 1058 (1992). Furthermore, statistics "are of relatively low importance in an individual disparate treatment case." *Gilty v. Village of Ozark Park*, 919 F.2d 1247, 1253 n.8 (7th Cir. 1990). The Eleventh Circuit has stated that "statistics alone cannot make a case of individual disparate treatment." *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1131 (11th Cir. 1984). Thus, the plaintiff must attempt to establish a prima facie case of discrimination through circumstantial evidence.

11

## C. *McDonnell Douglas* Test.

Where a plaintiff's discrimination claim is based on circumstantial evidence, the court employs the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff has the burden of establishing a prima facie case of discrimination.[8] "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden of production then shifts to the defendant, requiring an articulation of some "legitimate, nondiscriminatory reason" for the alleged discriminatory employment action. *Id.* "'[I]t is possible for the defendant to present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted.'" *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 950 (11th Cir. 1991), *cert. denied*, 502 U.S. 1058 (1992) (quoting *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 596 (11th Cir. 1987)).

Once the defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination "drops from the case." *Burdine*, 450 U.S. at 255 & n.10. The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather is a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804. "'[B]ecause the plaintiff bears the burden of establishing pretext [for discrimination], he must present

---

[8] Under this test, the elements of a prima facie case may be modified to fit the circumstances. "The *McDonnell Douglas-Burdine* proof structure 'was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.'" *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 594 (11th Cir. 1987) (quoting *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983)).

'significantly probative' evidence on the issue to avoid summary judgment.'" *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 444 (11th Cir. 1996) (quoting *Young v. General Foods Corp.*, 840 F.2d 825, 829 (11th Cir. 1988), *cert denied*, 488 U.S. 1004 (1989)) (other citations omitted) (alterations in original). The plaintiff may establish that the defendant intentionally discriminated against him "'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989) (quoting *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1445 (11th Cir.), *cert. denied*, 474 U.S. 1005 (1985)). "'Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, non-discriminatory reasons for its actions.'" *Isenbergh*, 97 F.3d at 444 (quoting *Young*, 840 F.2d at 830). If a plaintiff succeeds in this burden, the "disbelief of the defendant's proffered reasons, together with the prima facie case, is sufficient circumstantial evidence to support a finding of discrimination" and to preclude summary judgment. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir.).

To establish a prima facie case of age discrimination with circumstantial evidence, Love must prove that (1) he is a member of a protected group; (2) an adverse employment action was taken against him; (3) he was replaced by an individual from outside the protected group; and (4) he was qualified for the position. *See Carter*, 870 F.2d at 582 (third element plaintiff must prove is that the person hired was from outside the protected

13

group). Assuming, without deciding, that the plaintiff can establish these four elements, the plaintiff's case nevertheless fails.

Once the plaintiff makes out a prima facie case of discrimination, the burden shifts to Wal-Mart to articulate a legitimate, nondiscriminatory reason for its actions. It is undisputed that Gaskins completed a coaching form with regard to Love's performance on March 6, 1995. At that time, Love admitted that he had the responsibility to insure his area was arranged as required and had failed to do so. Gaskins advised the plaintiff that if his performance did not improve, the next level of corrective action would be a second written coaching and possible demotion to an hourly position. By late July 1995, Gaskins determined that the plaintiff's performance had failed to improve and that Love could not continue as an assistant manager at the Oneonta store. He informed the plaintiff of his decision in August of 1995. Accordingly, the defendant has met its burden of articulating a legitimate, nondiscriminatory reason for its actions — the plaintiff's unsatisfactory performance.

Thus, the burden shifts back to the plaintiff to establish by a preponderance of the evidence that the defendant's articulated reason is mere pretext for discriminatory motive. He offers four arguments on the issue of pretext: (1) that Gaskins' failure to follow Wal-Mart's coaching policy demonstrates a pretext for his decision; (2) that the plaintiff's previous performance evaluations concluding that he met or exceeded the company's expectations demonstrate that Wal-Mart's reason is not based on fact; (3) that Wal-Mart has a corporate strategy to discriminate against older management in employment in SuperCenter stores; and (4) that prior management remarks regarding the plaintiff's length

14

of service demonstrate a pretext for intentional age discrimination. *Opponent's Responsive Submission* at 19-24.

While it may be true that Gaskins failed to follow Wal-Mart's coaching policy, such a fact does not demonstrate pretext on the defendant's part. Gaskins' assessment of the plaintiff's performance need not be correct; rather, it need only be held in good faith. *Moore v. Sears, Roebuck and Co.*, 683 F.2d 1321, 1323 n. 4 (11th Cir. 1982). Love, however, has offered no evidence disputing the fact that Gaskins believed in good faith that the plaintiff's performance was substandard or that this belief was not based in fact. Thus, the fact that Gaskins' failure to follow Wal-Mart's coaching policy is immaterial to the issue of pretext on the defendant's part.

The fact that Love received prior satisfactory performance evaluations from other managers also fails to meet his burden. These evaluations were not completed by Gaskins and thus are irrelevant. *Jones v. Gerwens*, 874 F.2d 1534, 1541-42 (11th Cir. 1989). The plaintiff's assertion that Wal-Mart has a company policy regarding management age in SuperCenter stores is merely that — an assertion. His conclusory allegations, however, are insufficient to establish pretext. Finally, Love contends that remarks regarding his length of service are indicative of Wal-Mart management's cognizance of his age. As discussed before, however, these remarks are remote in time to the alleged discrimination and were made by managers other than Gaskins. Thus, they are insufficient to establish pretext on the part of the defendant. *See Mauter v. Hardy Corp.*, 825 F.2d 1554, 1558 (11th Cir. 1987).

In summary, the defendant has articulated a legitimate non-discriminatory reason for its conduct regarding the plaintiff. Mr. Love, however, has failed to produce evidence

sufficient to raise a genuine issue of fact regarding whether the defendant's proffered reason was but a pretext to cover unlawful age discrimination.

**V.   Conclusion.**

Accordingly, the defendant's motion for summary judgment will be granted and the action will be dismissed. The court will enter an appropriate order in conformity with this opinion.

Done, this 6th of August, 1997.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE